No. 25-1684

United States Court of Appeals
for the First Circuit

Eric Krieg
Petitioner - Appellant

v.

Andrew Ackley, Acting Warden, FCI Berlin
Respondent - Appellee

From the United States District Court for the District of
New Hampshire
Case No.: 22-CV-533-JL-AJ

Appellant's Brief

Parties of Interest

Appellant:
Eric Krieg #17161-027
USP McCreary
P.O. Box 3000
Pine Knot, KY 42635

Appellee:
Warden Andrew Ackley
FCI Berlin
P.O. Box 9000
Berlin, NH 03

TABLE OF CONTENTS

| Section | Page |
|---|---|
| Questions Presented | iii |
| Table of Authorities | iv |
| Jurisdiction | 1 |
| Constitutional and Statutory Provisions | 1 |
| Introduction | 2 |
| Reason for Granting the Appeal | 4 |
| Conclusion | 9 |

Appendices

Magistrate's Report and Recomendations

Objections to Magistrates Report and Recomendations

## QUESTIONS PRESENTED

Must all of Krieg's non-frivolous arguments be addressed by the court?

    Krieg claims "yes".

Is 52 U.S.C. §10307(c) an offense?

    Krieg claims "no".

# TABLE OF AUTHORITIES

| Cases | PAGE(S) |
|---|---|
| 1) American Legion v. American Humanist Ass'm, 139 S. Ct. 2067, 2087 (2019) . | 6 |
| 2) Arizona v. Inter Tribal Council of AZ, Inc., 570 U.S. 1129 (2013) | 7 |
| 3) New York State Rifle Ass'n v. Bruen, 142 S. Ct. 2111 (2022) | 3,4,5 |
| 4) Concepcion v. United States, 597 U.S. 481 (2002) . . | 5 |
| 5) Giles v. California, 554 U.S. 353, 358 (2008) . . | 6 |
| 6) United States v. Heller, 554 U.S. 570 (2008) . . . | 5,7 |
| 7) Illinois ex. rel. Madigan v. Telemarketing Associates, Inc., 538 U.S. 600, 620 (2003) | 6 |
| 8) Konigsberg v. State Board of Cal., 366 U.S. 36, 50 (1961) | 5 |
| 9) Limits, Inc. v. Thorton, 514 U.S. 856, 1155 (1995) . . | 7 |
| 10) McDonal v. Chicago, 561 U.S. 742, 828 (2010) . . . | 6 |
| 11) Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 808, (819) (2000) | 6 |
| 12) United States v. Playboy Ent. Crp., 529 U.S. 808, 819 (2000) | 6 |
| 13) Rosario v. Rockefeller, 410 U.S. 752, 761-62 (1973) . | 7 |
| **Statutes** | |
| 52 U.S.C. 10307(c) | passim |

## JURISDICTION

This Court has jurisdiction over appeals from all final decisions of its subsidiary district courts pursuant to 28 U.S.C. §1291.

## CONSTITUTIONAL AND STATUTORY PROVISIONS

Since the Supreme Court decision in <u>Wolft v. McDonnell</u>, 418 U.S. 539, 558, 94 S. Ct. 22963, 41 L. Ed. 2d 935 (1974), it has been assumed in the First Circuit that prison inmates have a liberty interest in good conduct time credits. See for example, <u>Luther v. Vose</u>, 89 F. 3d 823, 1996 U.S. App. LEXIS 15261 (1st Cir. 1996). Thus, Petitioner properly brought his claims concerning loss of Good Conduct Time via §2241 petition.

Due process requires that the DHO's decision be supported by "some evidence [of the offense charged]"; the relevant question is "whether there is any evidence in the record that can support the [DHO]'s conclusion." <u>Superintendant Mass. Correctiona Inst. v. Hill</u>, 472 U.S. 445, 455-56, 106 S. Ct. 2768, 86 L.Ed. 2d 356 (1985).

INTRODUCTION

Eric Krieg, pro se, an inmate with the Federal Bureau of Prisons currently incarcerated at United States Penitantiary McCreary in Pine Knot, Kentucky, previously incarcerated at Federal Correctional Institute Berlin in Berlin, New Hampshire, whose appeal of the United States District Court for the District of New Hampshire's DENIAL of his §2241 petition is currently before this court for consideration in case number 25-1684, submits this appellant brief and states the following:

Krieg filed a §2241 Petition contesting a disciplinary decision and loss of Good Conduct Time he received at FCI Berlin, where Krieg was incarcerated at the time he filed his §2241 Petition with the district court. The incident in question resulted from Krieg's attempt to register to vote in time for the 2024 Presidential Election, to be able to vote for President Donald J. Trump in an attempt to bolster an upcoming Petition for Commutation to the President.

Inmates are enfranchised in the District of Columbia, and based on instructions and a form provided by the Federal Bureau of Prisons, Krieg mailed an application to the Columbia Board of Elections in Washington D.C. In said application, Krieg indicated his address as 1600 Pennsylvania Avenue, and swore that he would "return" to the district upon his release.

Before the mailing left the prison, it was flagged and reviewed by "Special Investigative Services" officer G. Richards, who completed an incident report claiming that Krieg knowingly made false statements in his application, thereby violating 52 U.S.C. §10307(c) - providing false information in registering to vote, claiming that Krieg "does not CURRENTLY reside at 1600 Penssylvania Ave...". Richards issued an incident report for violation of Prohibited Act Code (PAC) 196, criminal mail abuse, and Code 313, lying or providing a false statement to a staff member. Krieg was found guilty by Berlin's "Disciplinary Hearing Officer" (DHO) and lost 41 days of Good Conduct Time as a result.

Krieg fully exhausted his administrative remedies in appealing the DHO's decision (the BOP's so called BP-9, BP-10, and BP-11 forms).

Krieg filed a timely §2241 Petition, claiming that there was no evidence that he violated Code 196 and that 52 U.S.C. §10307(c) does not apply to his situation. Additionally, he argued in his objections to the magistrates findings that the "knowingly and willfully" element could not be found, and that 52 U.S.C. §10307(c) is not an offense as it is an unconstitutional regulation of a right that did not exist at the time of the enactment of the Constitution. These two arguments were not addressed by the district court.

In this brief, Krieg will argue that the district court did not address all his non-frivolous arguments. In particular, 52 U.S.C. § 10307(c) is not an offense, as it is an unconstitutional regulation of a right, the regulation of which did not exist at the time the Constitution was passed, and the government cannot show a "historical analogue" to this regulation. See New York State Rifle Ass'n v. Bruen, 142 S. Ct. 2111 (2002) ("a constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all") Bruen at 2129; the government must "identify an American tradition" justifying the regulation's existence, and it is cannot, courts may no longer apply a "means-end scrutiny" to uphold the regulation. Id. at 2125, 2138. Instead, the inquiry ends and the regulation is unconstitutional.

Krieg will show that, under the Election's Clause of the U.S. Constitution, all aspects of voter registration are rightly belonging to the states other than "the times, places, and manner of holding elections for senators and representatives." U.S. Const. Art. I, §4, cl. 1. As such, a federal law punishing violations of voter registration, such as 52 U.S.C. §10307(c) are unconstitutional unless the government can prove a "historical analogue" to such a regulation. In this case, the government cannot. And if 52 U.S.C. §10307(c) is not an offense, Krieg could not be found to have violated PAC 196 in furtherance of it.

-3-

## REASON FOR GRANTING THE APPEAL

Krieg filed an "Objections to Magistrate's Report and Recommendation". In it, he claimed:

There is a bigger issue, a Constitutional one. Krieg believes that the statute itself [52 U.S.C. §10307(c)] is unconstitutional. We know that, historically, voting under the Constitution (determining who is allowed to vote) is a power delegated to the states. For example, even before women had the right to vote under the 20th Amendment, some states like Wyoming allowed them to. We also needed an Amendment to eliminate poll taxes [or to lower the voting age] which were rightly a state power under the Constitution as originally written.

Now, unfortunately, BOP law libraries do not include access to law review articles, so this argument is not fully fleshed out. However Providence has provided Krieg as article from Smithsonian magazine about a federal court case from Terre Haute, Indiana. The mayor was using fraudulent registrations to steal elections, circa 1912. Very interestingly, this was not a federal crime, even during a Federal Election. Krieg has attached a copy of the article, highlighting the relevant parts.

So, it does not appear that Congress believed that regulating Federal Elections in the manner of §10307(c) was a federal power in the time frame of the enactment of the 13th, 14th, or 15th Amendments (the basis for the Federal powers under Title 52). As we know from many cases, such as New York State Rifle Association v. Bruen, we need to look to contemporaneous evidence of a federal punishment power at the time that power was enacted (either the Constitution's enactment in 1789 or the enactment date of the Amendment in question). While this is somewhat more complicated in that the District's vote for President was itself the result of an Amendment, there is nothing in that amendment that gives the Federal government the power to punish something that is clearly a state power under the Constitution (the right to determine who is a legitimate voter and to punish violations of election law). §10307(c) is simply not an offense.

Objections to Magistrate's Report and Recommendation, pgs. 2-3, see attached document. Again, while the argument may have not been fully fleshed out, the district court did not address the argument when it adopted the Magistrate's report and recommendations and dismissed Krieg's petition.

Under Conception v. United States, 597 U.S. 481 (2022), in the context of a 404 motion, all of a defendant's non-frivolous arguments must be addressed. That did not happen in this case. As a result, this court should vacate the district court's order and remand the case for resolution of this issue.

## APPLICABILITY OF BRUEN ET AL TO §10307(c)

Bruen, in the context of the 2nd Amendment, and other cases in other Constitutional contexts, show that "mean-ends scrutiny" is unconstituional in this context:

> In sum, the Court of Appeals' second step [means-ends scrutiny/ intermediate scrutiny test] is inconsistent with Heller's [D.C. v. Heller, 554 U.S. 570] historical approach and its rejection of means-end scrutiny. We reiterate that the standard for applying the Second Amendment is as follows: when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command". Konigsberg, 366 U.S. at 50.

> This Second Amendment standard accords with how we protect other constitutional rights. Take, for instance, the Freedom of Speech in the First Amendment, to which Heller repeatedly compared the right to keep and bear arms. 554 U.S. at 582, 595, 606, 618, 634-35... In that context, "[w]hen the government restricts speech, the government bears the burden of proving the constitutionality of its actions."

U.S. v. Playboy Ent. Grp. Inc., 529 U.S. 808, 819 (2000); see also Philadelphia Newspapers Inc. v. Hepps, 475 U.S. 767, 777 (1986). In some cases, that burden includes showing whether the expressive conduct falls outside of the category of protected speech. See Illinois ex. rel. Madigan v. Telemarketing Associates, Inc., 538 U.S. 600, 620 (2003). And to carry that burden the government must generally point to historical evidence about the reach of the First Amendment's protections. See e.g. U.S. v. Stevens, 559 U.S. 460, 468-71 (2010) (placing the burden on the government to show that a type of speech belongs to a "historical and traditional categor[y]" of constitutionally protected speech "long familiar to the bar.").

And beyond the freedom of speech, our focus on history also comports with how we assess many other constitutional claims. If a litigant asserts the right in court "to be confronted with the witness against him", U.S. Const. Amend. VI, we require courts to consult history to determine the scope of that right. See e.g. Giles v. California, 554 U.S. 353, 358 (2008) ("admitting only those exceptions [to the Confrontation Clause] established at the time of the Founding." Similarly, when a litigant claims a violation of his rights under the Establishment Clause, members of this court "loo[k] to history for guidance ." American Legion v. American Humanist Ass'n, 139 S. Ct. 2067, 2087 (2019) (plurality opinion). We adopt a similar approach here.

To be sure "[h]istorical analysis can be difficult; it sometimes requires resolving threshold questions and making nuanced arguments about which evidence to consult and how to interpret it." McDonald, 561 U.S. at 803, 804 (Scalia, J. concurring). But reliance on history to inform the meaning of the constitutional text - especially text meant to codify a pre-existing right - is, in or view, more legitimate, and more administrable, then asking judges to "make difficult empiracle judgments" about "the costs and benefits of firearms restriction", especially given their "lack [of] expertise" in the fied. Id. at 790-91 (plurality opinion).

Bruen, 142 S. Ct. 2111 at *12-13. From the above excerpt, we see that

the search for a historical analogue to justify a restriction upon a constitutional right does not just apply to the Second Amendment. Bruen cites cases apply the same framework to the Freedom of Speech, the Establishment Clause, and the Confrontation Clause. There can be no doubt that this framework must also apply to the Elections Clause as well.

Voter registration in general has been upheld by the Supreme Court based on "means-ends scrutiny" of the type found unconstitutional in Bruen et al. See Rosario v. Rockefeller, 410 U.S. 752, 761-62, 93 S. Ct. 1245 (1973) (upholding voter registration because it advanced a "particularized legitimate purpose: and was "in no sense invidious or arbitrary"). But see Bruen, 597 U.S. at 22-23 (rejecting "judge empowering interest balancing" (quoting Heller, 554 U.S. at 634). This is interesting in that the issue in Rosario was new voters, newly enfranchised by the 25th Amendment but who did not have the opportunity to register for a partisan primary within 30 days of the primary election.

> As I have previously explained, constitutional text and history both "confirm that States have the exclusive authority to set voter qualifications and to determine whether those qualifications are satisfied". Arizona v. Inter Tribal Council of Ariz. Inc., 570 U.S. 1, 29, 133 S. Ct. 2247 (2013) (dissenting opinion). The Voter Qualifications Clause provides that, in elections for the House of Representatives, "the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. Const. Art. 1, §2, cl. 1. The Seventeenth Amendment imposes an identical requirement for elections of Senators. And the Constitution recognized the authority of States to "appoint" Presidential electors "in such Manner as the Legislature thereof may direct." Art. II, §1, cl. 2. See Inter Tribal Council of Ariz, 570 U.S. at 35, n. 2. (opinion of Thomas, J.) States thus retain the authority to decide the qualifications to vote in federal elections, limited only by the requirement that they not "establish special requirements" for congressional elections "that do not apply in elections for the state legislature". Id. at 26 (quoting Limits, INc. v. Thorton, 514 U.S. 779, 865, 115 S. Ct. 1842 (1995) (Thomas, J. Dissenting)). And because the power to establish requirements would mean little without the ability to enforce them, the Voter Qualifications Clause also "gives states the authority... to verify whether [their] qualific-

-7-

ations are satisfied." 570 U.S. at 28.

Husted v. A. Phillip Randolp Inst., 587 U.S. 756 (2018). Clearly, from the context of the above quotation, the Federal Government does not have the jurisdiction to punish violations of state [in this case the District of Columbia] voter registration laws. This was Krieg's claim, that his due process rights were violated as the U.S. Attorney for the District of New Hampshire was consulted to see if he wanted to prosecute Krieg, but the proper process would have been for the Election Board for the District of Columbia to decide if there was a violation, and then it would have been up to the local District of Columbia prosecutor to determine if there was a crime. But the District Court did not address this argument, instead the Magistrate ruled that lack of a prosecution does not imply a lack of a crime.

In this case, the Elections clause states that "The Times, Places, and Manner of holding elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter ruch Regulations, except as to the Places of chusing Senators." U.S. Const. Art I, §4, cl. 1. By the plain language of the clause, it does not appear to allow Congress to interfere with voter qualifications. As such, it would be up to the government to prove a "historical analogue" to 52 U.S.C. §10307, as it would for the Voter Qualifications clause as well. Obviously, that was not done in this situation.

Regarding Krieg's claim that 52 U.S.C. §10307 was not an offense, the district court ruled that the DHO used "some evidence" to convict him because Krieg did not offer any defense at the hearing. But this PAC is different than any other. Normally, an incident involves a directly prohibited act. In PAC 196, what is prohibited is an act in furtherance of an actual offense, in this case 52 U.S.C. §10307(c). The DHO did not examine the issue of the criminal offense. In fact, Officer Richard misquotes one of the elements of the offense, claiming that the fact that the address on the voter registration form wasn't his CURRENT address (presumably, the address of FCI Berlin) as proof of offense, when clearly the Board of Elections allows one to register at the address one intends to return to. The point is that the exist-

-8-

ance of the criminal offense itself was never questioned. And Krieg's silence at the hearing is not dispotive, as Krieg had no access to the law library while in the Secured Housing Unit. It wasn't until after the hearing, after he had been discharged from the SHU that he could research the statute in question. It was then that he worked out that §10307(c) is unconstitutional and thus not an offense.

## CONCLUSION

Therefore, as 52 U.S.C. §10307(c) is unconstitutional under Bruen et al, and therefore is not an offense, and as there was therefor no evidence to support PAC 196 in Krieg's case, and as the district court did not rule on this claim, in violation of Concepcion, Krieg respectfully requests that this court vacate the district court's order denying Krieg's §2241 petition and remand for consideration of all claims.

Respectfully Submitted,

x _____
Eric Krieg, pro se
BOP #: 17161-027
USP McCreary
P.O. Box 3000
Pine Knot, KY 42635

I swear under the penalty of perjury that I deposited the foregoing into the USP McCreary prison legal mail system on this 21 day of August, 2025 with first-class postage pre-paid.

-9-

Eric Krieg
BOP #: 17161-027
USP McCreary
P.O. Box 3000
Pine Knot, KY 42635

Federal Clerk
U.S. Court of Appeals

RE: 25-1685

Dear Sir/ Madam,

   Please find for filing one copy of the following in the above case number:

1) Appellant's Brief
2) Application to Proceed in Appellate Court without Prepaying Fees or Costs

Respectively Submitted,

x_____
Eric Krieg, pro se
August 21, 2025



Eric Krieg #17161-027
United States Penitentiary McCreary
P.O. Box 3000
Pine Knot, KY 42635

Federal Clerk
Court of Appeals
1 Courthouse Way
Boston, MA 02210